## NEWMAN *v.* NEWMAN ET AL.

---

EMINENT DOMAIN; BUILDING LINE; STATUTE; CONSTITUTIONAL LAW; BEN-
    EFITS; APPEAL AND ERROR; COSTS; SUPREME COURT; JURISDICTION;
    WAIVER; JURY; ESTOPPEL.

1. The existence, by virtue of a dedication, of a building line running
   through part of the block, identical so far as it goes, with the line
   sought to be established for the block in a proceeding under the act
   of Congress of June 21, 1906 (34 Stat. at L. 384, chap. 3505), does
   not make the line so sought to be established less than one block in
   length, within the prohibition, in sec. 1 of such act, against the es-
   tablishment of a building line less than one block in length.

2. Section 4 of the act of Congress of June 21, 1906 (34 Stat. at L. 384,
   chap. 3505), authorizing the commissioners of the District of Co-
   lumbia to permit buildings existing at the time of the establishment
   of a building line which project beyond the line to remain until the
   owners desire to reconstruct or substantially alter them, does not ren-
   der the act invalid upon the ground that its effect is to compel the
   owners against whose property benefits have been assessed to pay the
   assessments before the benefits have accrued to their property from
   the established line; but in a proceeding under the act, if it appears
   that such buildings are not to be removed immediately, the court
   will instruct the jury to take that fact into consideration in assess-
   ing benefits.

3. In a proceeding for the establishment of a building line under the act of Congress of June 21, 1906 (34 Stat. at L. 384, chap. 3505), the removal of buildings projecting beyond the line, may be taken into consideration by the jury in assessing benefits.

4. The admission of the statement of a witness whose testimony related to the value of the benefits to the property affected that the maintenance of a grocery store and Chinese laundry in a building whose removal would be necessary to the establishment of a building line, in a proceeding under the act of Congress of June 21, 1906 (34 Stat. at L. 384, chap. 3505), is detrimental and injurious to all the real estate embraced in the proceeding, is not reversible error, where it is apparent from his entire testimony that he assumed that all buildings projecting beyond the proposed line would be removed, and had not assumed that the store and laundry would be discontinued, and where the jury was not misled or confused by such statement.

5. The costs growing out of the abortive assessment by the first jury in the first stage of a proceeding to establish a building line under the act of June 21, 1906 (34 Stat. at L. 384, chap. 3505), in which the first verdict is set aside under sec. 1608, D. C. Code [31 Stat. at L. 1429, chap. 854] upon the filing of objections by some of the parties assessed, and a new jury directed to be summoned, are properly included in the expenses of the proceeding under the requirement of sec. 1608j of the Code [33 Stat. at L. 736, chap. 734] that the amount assessed as benefits shall include compensation for the marshal and jurors, "and all other expenses of such proceeding."

6. Objection to the jurisdiction of the supreme court of the District of Columbia of a proceeding to establish a building line under the act of Congress of June 21, 1906 (34 Stat. at L. 384, chap. 3505), because of defective publication, is waived by appearance and participation in the proceeding. (Following *Wiegand* v. *Siddons*, 41 App. D. C. 130.)

7. A party whose land is not condemned cannot raise the question, in a proceeding to establish a building line under the act of Congress of June 21, 1906 (34 Stat. at L. 384, chap. 3505), whether the compensation for the land to be taken should be ascertained by a common-law jury.

8. A party to a proceeding to establish a building line under the act of Congress of June 21, 1906 (34 Stat. at L. 384, chap. 3505) is estopped from raising the question whether the compensation for the land to be condemned should be ascertained by a common-law jury, by proceeding before a jury of five without raising such question.

No. 2681.   Submitted October 13, 1914.   Decided January 4, 1915.

HEARING on an appeal by the respondent from a judgment of the Supreme Court of the District of Columbia confirming the verdict of a condemnation jury and returning an assessment against his land in a proceeding to establish a building line.　　　　　　　　　　　　　　　　　　　　　*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal by Edward A. Newman from a judgment in the supreme court of the District confirming the verdict of a condemnation jury establishing a building line on the west side of Thirteenth street from Park road to Monroe street, and returning an assessment of $455 against appellant's land.

The act of June 21, 1906 (34 Stat. at L. 384, chap. 3505), authorizes the commissioners of the District to establish building lines on streets or parts of streets less than 90 feet wide in the District of Columbia upon the petition of the owners of more than one half of the real estate required for the establishment of the building line, or when the commissioners deem that the public interests require the establishment of such building line. The establishment of a building line on any part of streets less than one block in length is forbidden. The act further provides that the assessment proceedings, assessment area, etc., shall be according to the provisions of secs. 1608f to 1612, inclusive, of the Code [33 Stat. at L. 734–737, chap. 734], so far as applicable.

In the present case an order of publication was issued and a jury of five were impaneled and sworn, and proceedings were duly prosecuted to a verdict. Objections having been filed to the verdict by some of the parties assessed, and in part sustained by the court, the commissioners, acting under the authority of sec. 1608 of the Code [31 Stat. at L. 1429, chap. 854], moved the board to set aside the verdict in its entirety and direct the summoning of a new jury, which was done. After the summoning and swearing of the second jury, the appellant filed pleas and a motion to dismiss on the ground that the building line sought to be established did not run

through the entire square or block, as required by law, and on the further ground that the act was unconstitutional. The motion to dismiss was overruled, and the jury, on December 12, 1911, returned a verdict awarding damages for the land taken and assessing benefits to the extent of said value plus the costs of the proceedings, in which verdict the land of the appellant was assessed in the sum of $455. Various exceptions were filed by the appellant, which were overruled and the verdict confirmed.

*Mr. John Ridout* and *Mr. A. Leftwich Sinclair* for the appellant.

*Mr. Conrad H. Syme,* Corporation Counsel, and *Mr. James Francis Smith,* Assistant, for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

It is contended that because a building restriction line identical with the one sought to be established already existed by virtue of a dedication running through part of the square, the building line sought to be established ran through less than one square or block, and hence was not authorized by said act of 1906. The prohibition upon which this contention is based was obviously intended to prevent the establishment of a building line less than one block in length, but certainly it was not contemplated by Congress that, because one resident in a block is sufficiently public spirited to dedicate land opposite his residence for a building line, the commissioners are then powerless to establish a building line the entire length of the square. Such an interpretation of this act would make it possible for the owner of a 25-foot lot, by establishing a building line as to that lot, to defeat the establishment of a building line for the block. The condition aimed at by Congress, namely, a building line less than a block in length, would thereby be established and the very purpose of the act defeated. The building line established by these proceedings extends the length of

the block.    The fact that part of the residents had dedicated, or were willing to dedicate, the necessary land, did not deprive the commissioners of authority to establish the line.

Section 4 of said act of 1906 authorizes the commissioners, whenever they deem it desirable in the interests of economy, to permit buildings existing at the time of the establishment of a building line which project beyond said line, to remain until such time as the owners of said building desire to reconstruct or substantially alter them.    It is contended that this provision renders the act invalid because its effect is "to compel the owners against whose property benefits had been assessed to pay the assessments before the benefits had accrued to their property from the. established line."    In the present case the commissioners did not attempt to exercise their discretion and permit any building to remain.    But, even if they had, we do not think the provision open to objection.    The very purpose of the provision is to lessen the assessment for benefits, and not to increase it.    In street construction benefits usually are assessed before they actually accrue, but that does not prevent their ascertainment.    So, here, if buildings were not to be removed immediately, the court would instruct the jury to take that fact into consideration in assessing the benefits.

It appears that to establish this building line it would be necessary to remove a building occupied as a grocery store and Chinese laundry.    A Mr. Terrell, called as a witness for the petitioners, testified as to the amount of the damages and benefits which, in his opinion, would be sustained by the various properties in this proceeding arising from the establishment of the proposed building line, but did not include therein anything because of the possible discontinuance of the grocery store and laundry.    He stated, however, under cross-examination, that the maintenance of such store and laundry was detrimental and injurious to all the real estate embraced in this proceeding, including that of the appellant.    Counsel for appellant objected to the admissibility of this testimony, "because, under the terms of the law, there was no certainty that the building would be removed within a reasonable or other

time." Later on counsel for appellant asked the court to instruct the jury "not to consider the uses to which the improved property sought to be taken for the establishment of said building line herein is applied, in estimating the damages or benefits, or both, sustained by the real estate involved in this proceeding." The court permitted the testimony of the witness to stand, and told the jury to assess the entire amount awarded as damages for the land condemned, plus the cost and expense of the proceeding upon each lot, or part of lot, or parcel of land, in the square or block confronting the square in which said building line was to be established, *which would be benefited by the establishment of such building line,* in such proportion as the jury should find such lots, parts of lots, or parcels of land would be benefited; that the jury should not assess benefits arbitrarily, but only where they should find an actual enhancement in value; that they were not to assess any benefit against any lot unless they should find such lot to be specially benefited, and then only to the extent of the benefit they might find, and, finally, that if it should appear that the actual benefits found did not equal the damages allowed, they were so to report to the court.

The correctness of the amount awarded as damages for the land to be condemned is not here involved, the sole question being as to the apportionment of those damages among those benefited within the assessment zone. The jury undoubtedly were authorized, in assessing benefits, to take into consideration the fact that the building or buildings occupied as a store and laundry were to be removed. This is indicated by the provision in sec. 4 of said act of 1906, authorizing the commissioners, "whenever they deem it desirable *in the interest of economy,*" to permit buildings existing at the time of the establishment of a building line to remain until such time as the owner of such buildings desires to reconstruct or substantially alter them. In proportion as the damages would be reduced by permitting a building to remain and project beyond the building line, the accruing benefits would be diminished. In other words, greater benefits would accrue to those within

the assessment area if all buildings projecting beyond the line
to be established were removed than would accrue if part of
those buildings were permitted to remain. It is equally true
that greater benefits would accrue by the establishment of a
building line when buildings were to be removed as the result
of the proceedings than would accrue where no buildings were
involved; that is, where no buildings projected beyond the line
to be established. We think, therefore, that it was competent
for the jury, in assessing benefits, to take into consideration
the removal of buildings projecting beyond the building line.

We do not think the jury was misled or confused by the
expression of opinion by the witness Terrell under cross-exami-
nation, that the maintenance of a grocery store and laundry
was injurious to property in the vicinity. In testifying as
to the value of the benefits to those affected, the witness had
merely assumed that all *buildings* projecting beyond the pro-
posed line would be removed, and had not assumed that the
store and laundry would be discontinued. That counsel for
appellant then fully understood the purport of the testimony
of this witness is evident from the nature of the objection then
interposed, to the effect that "there was no certainty that the
*building* would be removed within a reasonable or other time."

It is further contended that the court erred in including the
cost of the proceedings before the first jury in assessing the
costs of this proceeding. The statute requires the jury to
assess as benefits an amount equal to the amount of damages
as ascertained by them, including compensation for the mar-
shal and jurors, "and all other expenses of such proceeding."
Code, sec. 1608j [33 Stat. at L. 736, chap. 734]. It is evi-
dent, therefore, that Congress intended that all the expenses
incident to the proceeding should be assessed as benefits, pro-
vided, of course, that the benefits accruing should equal or ex-
ceed the damages, including expenses. There was but one pro-
ceeding here, and the costs growing out of the abortive assess-
ment by the first jury are clearly incident to that proceeding
and properly taxed therein.

The contention is made that the court was without jurisdic-

tion because of defective publication. Since the record shows that the appellant was present and participating throughout the proceeding, this objection is met by the decision in *Wiegand* v. *Siddons,* 41 App. D. C. 130.

The further question now for the first time is attempted to be raised, whether the party whose land is to be taken by proceedings under eminent domain is entitled to have his compensation ascertained by a common-law jury. In the first place, those whose land was condemned are not raising this question; and, in the second, appellant, by proceeding before the jury of five without raising it, now is estopped to do so.

Judgment affirmed, with costs.                    *Affirmed.*